UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KAREN HYLTON,<br><br>         Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>         Defendants. | Case No. 23-cv-3054 (JMC) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Karen Hylton, a *pro se* plaintiff, alleges that Metropolitan Police Department (MPD) officers falsely arrested her and then, when detaining her at the police station, physically assaulted and sexually violated her. ECF 1 at 1–3.[1] She also alleges that the Mayor of the District of Columbia, Muriel Bowser, was aware of a "trend" of excessive force and sexual misconduct by officers, including the officers who allegedly assaulted her, and did nothing to stop or prevent it. ECF 35 at 2. She has sued the District of Columbia and the four officers who she alleges arrested and assaulted her. The District moves to dismiss. ECF 21. Hylton opposes and has filed multiple additional filings while the District's motion has been pending, which the Court will consider as supplemental responses to the District's motion to the extent the filings contain any additional information or arguments relevant to the District's motion. *See* ECF 23; ECF 27[2]; ECF 30; ECF 31; ECF 35; ECF 36; ECF 37; ECF 39. The District has responded to each of Hylton's filings, and

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] Although Hylton's filing at ECF 27 is styled as a motion for leave to file an amended complaint, in reviewing the proposed amended filing, the Court cannot identify what, if anything, is materially different about the amended filing. Out of an abundance of caution, the Court is considering the filing as a supplement to Hylton's opposition to the District's motion to dismiss and thus any request to amend the complaint is denied, without prejudice, as moot.

1

the Court considers those supplemental responses, too, in deciding this motion. *See* ECF 25; ECF 29; ECF 32; ECF 34; ECF 38.

Hylton's allegations state a claim for municipal liability under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). On a motion to dismiss, the Court must assume the truth of any "well-pleaded factual allegations" in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In addition, because Hylton is a *pro se* plaintiff, the Court "must also consider the submissions outside of the complaint," *Fontanez v. Berger*, No. 21-CV-02073, 2022 WL 3646353, at *7 (D.D.C. Aug. 24, 2022) (citing *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015)), and must hold the pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Across her pleadings, which repeatedly cite § 1983 as the cause of action, Hylton pleads all the elements of a *Monell* violation and provides enough factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

To state a claim under *Monell*, a plaintiff must allege (1) "a violation of [her] rights under the Constitution or federal law," and (2) "that the municipality's custom or policy caused the violation." *Warren v. D.C.*, 353 F.3d 36, 38 (D.C. Cir. 2004). Hylton alleges that the four MPD officer Defendants engaged in "false arrest," as well as "excessive force" in the form of "sexual and physical assault," in violation of her "civil rights" or "amendment rights." ECF 23 at 2. The District does not dispute that Hylton's allegations could make out claims for false arrest or excessive force under the Fourth Amendment. *See generally* ECF 21. Regardless, the Court finds Hylton's allegations of excessive force, in particular, to be plausible.

Under the Supreme Court's "totality of the circumstances" test for excessive force in violation of the Fourth Amendment, the Court must consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Here, Hylton provides detailed allegations of four officers' aggressive efforts to detain her after they had already brought her to the police station, searched her, and handcuffed her. ECF 1 at 2–3. Those aggressive tactics allegedly included an officer "slam[ming] [her] face again[st] the wall," another officer "plac[ing] her fingers in [Hylton's] vaginal area" as Hylton screamed, and the officers collectively "throwing [her] in the jail cell as if [she were] paper." ECF 1 at 3. Assuming those allegations are true, they plausibly state an unreasonable seizure under the Fourth Amendment for purposes of her *Monell* claim, and the District offers no authority or argument to the contrary.

Hylton also plausibly alleges that a District policy or custom caused that constitutional violation. Plaintiffs can allege a policy or custom in multiple ways, two of which are relevant here. One method is to allege that a policymaker "knowingly ignore[d] a practice that was consistent enough to constitute custom." *Warren*, 353 F.3d at 39. The other is to allege a "failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Baker v. D.C.*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Such deliberate indifference "is determined by analyzing whether the municipality knew or should have known of the risk of constitutional violations, but did not act." *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir. 2011). And it requires "more than mere negligence,"

but instead "actual or constructive knowledge that its agents will probably violate constitutional rights." *Id.* (quoting *Warren*, 353 F.3d at 39).

According to Hylton, the officers who allegedly assaulted her regularly used excessive force of the kind she alleges they used on her. *See, e.g.*, ECF 1 at 3 (alleging that another officer at the jail where she was being held "was aware of these officers and their antics"); *id.* at 4 (alleging that "officers constantly are using their authority to victimize resident[s] especially while being detain[ed]," including "unwanted and undeserved excessive physical[] and sexual abuse," "especially with the Black community"); ECF 35 at 2 (alleging that the officers' "hustle" "often leads to false arrest [and] sexual, physical assaults"); *see also* ECF 1 at 3 (alleging that, when she went back to the police station the next day to complain about her treatment one of the officers involved laughed at her). Further, Hylton claims that the officers' supervisor knew about and either condoned or participated in this behavior. *See* ECF 35 at 2. And finally, she alleges, Mayor Bowser "w[as] and is aware of these office[r]s and the trend of her administration employees to include police officers' misconduct whether sexual or physical." *Id.*

Taking such allegations for their truth, as the Court must at this stage, they suggest at least deliberate indifference on the part of the Mayor to the probability of constitutional violations in the form of physical and sexual assault in the course of an arrest. *See Jones*, 634 F.3d at 601. They arguably also establish that the Mayor "knowingly ignore[d]" the practice, one that had become so common and customary that another officer at the police station knew about it, a supervisor knew about and condoned it, and one of the officers who allegedly did it laughed when the victim confronted the officer about the incident. *Warren*, 353 F.3d at 39. Such allegations suffice to state a *Monell* claim.

4

The District contends that Hylton's *Monell* claim must fail because she does not "identify a specific policy or custom in the District of Columbia that directs [the] constitutional violations [that she alleges happened to her]." ECF 21 at 7. To be sure, Hylton does not point to a specific written policy, or even a specific unwritten policy or practice admitted to or publicized by MPD. But she does not need to. The D.C. Circuit has made clear that "[t]here are a number of ways in which a 'policy' can be set by a municipality to cause it to be liable under § 1983" and that "the explicit setting of a policy" and "the action of a policy maker within government" are just two of them. *Baker*, 326 F.3d at 1306. So, too, are "knowing failure to act" to prevent a custom by subordinates and "deliberate indifference" to a "risk" of constitutional violations. *Id.* Hylton alleges a policy under the latter two methods, not the former two, and that is enough.

To be sure, Hylton will have to clear much higher hurdles in future stages of this litigation. She will need to provide actual evidence (not just allegations) of a customary practice of sexual and physical assault of arrestees in situations similar to hers—and that Mayor Bowser or another District policymaker knew about or was deliberately indifferent to that practice or the risk of it. But, at this stage, Hylton need only provide "a short and plain statement of the claim showing that [she] is entitled to relief," and the Court must accept all alleged facts as true and draw all reasonable inferences in her favor. Fed. R. Civ. P. 8(a).

By that same logic, however, the Court agrees with the District that Hylton has not stated any common law claims. Whereas she makes clear throughout her pleadings that she brings her claims under § 1983, she does not identify, even in general terms, any common law causes of action that would also entitle her to relief.

5

Still, because Hylton states a *Monell* claim under § 1983, the Court **DENIES** the District's motion to dismiss for failure to state a claim, ECF 21, and allows Hylton's § 1983 claim against the District to proceed.

**SO ORDERED.**

                                                                                                   _____

                                                                  JIA M. COBB
                                                                  United States District Judge

Date: February 14, 2025