## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KAREN HYLTON**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**DISTRICT OF COLUMBIA,** *et al.*,<br><br>*Defendants.* | **Case No. 1:23-cv-03054-JMC**<br>**Case No. 1:23-cv-03654-JMC** |

## DEFENDANT DISTRICT OF COLUMBIA'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Karen Hylton alleges that she was subject to excessive force when, following an arrest, she was searched and placed in a cell at the Fifth District Police Station.  Defendants District of Columbia, Officer Donna Ulrich, and Officer Straneika Proctor respectfully move under Fed. R. Civ. P. 56(c) that the Court grant summary judgment in their favor.[1]  Summary Judgment is appropriate because: (1) the body-worn camera footage clearly and indisputably shows that Plaintiff Karen Hylton was not subjected to excessive force; and (2) there is no evidence that the District has a policy or custom of excessive force in searches subsequent to arrest.

In addition, two of the defendants still have not been served, and should therefore be dismissed from the case.

A memorandum of points and authorities in support of this Motion and a proposed order are attached for the Court's consideration.

---

[1]     Individually named defendants Officer Brittany Nyamekye and Officer Tierra Caprice Proctor have not been served at this time.

Date:  August 18, 2025

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Jonathan Berman*
JONATHAN BERMAN [445169]
Chief, Civil Litigation Division, Section III

*/s/ Andrew B. Latham*
ANDREW B. LATHAM [90000707]
ELI KOPPEL*
Assistant Attorneys General
Civil Litigation Division, Section III
400 6th Street NW
Washington, D.C. 20001
 (202) 724-7316; (202) 442-9795
eli.koppel@dc.gov; andrew.latham@dc.gov

*Counsel for Defendant District of Columbia, et. al.*

## CERTIFICATE OF SERVICE

On August 18, 2025 I certify that I served a copy of the foregoing Motion for Summary

Judgment and accompanying memorandum, exhibits, and proposed order via email. I also asked

a staff assistant from my office to serve a hard copy by first class mail, postage prepaid, to:

Karen Hylton
2641 Naylor Road SE
Apt. 203
Washington, D.C. 20020
*tallskyys@gmail.com*
*Plaintiff pro se*

*/s/ Andrew B. Latham*
ANDREW B. LATHAM
Assistant Attorney General

---

* Admitted to practice in New York and Maryland. Practicing in the District of Columbia under the supervision of Chad Copeland and Fernando Amarillas, members of the District of Columbia Bar, pursuant to D.C. Court of Appeals Rule 49(c) and D.D.C. LCvR 83.2(g).

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KAREN HYLTON** | |
| *Plaintiff,* | **Case No. 1:23-cv-03054-JMC** |
| | **Case No. 1:23-cv-03654-JMC** |
| v. | |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT DISTRICT OF COLUMBIA'S**
**MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

Table of Contents…………………………………………………………………………………ii

Table of Authorities………………………………………………………………………………iii

Index of Exhibits……………………………………………………………………………..v

Introduction……………………………………………………………………………..1

Background……...………………………………………………………………………1

Procedural Posture…………………………………………………………………………...3

Legal Standard…………………………………………………………………………....4

Argument………………………………………………………………………………....5

    I.     The District Did Not Violate Any Clearly Established Right of Ms. Hylton and is Not Liable Under Section 1983………………………………………………………………5

        A.  The District Did Not Violate Ms. Hylton's Fourth Amendment Rights………………5

        B.  Ms. Hylton Has Not Provided Any Evidence That There is a Policy or Custom of Excessive Force Used During Searches Subsequent Arrest…………………………..8

    II.    The Individual Officers Did Not Violate Ms. Hylton's Protected Rights and Are Immune from Liability………………………………………………………………...9

    III.   Officers Tiara Proctor and Brittney Nyamekye Should Be Dismissed Because Ms. Hylton Failed to Properly Serve Them…………………………………………10

Conclusion……………………………………………………………………………10

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, (1986) ...................................................................................... 4

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*,
  520 U.S. 397 (1997) ...................................................................................... 8

*Bielevicz v. Dubinon*,
  915 F.2d 845 (3d Cir.1990) .......................................................................... 8

*Blodgett v. Univ. Club*,
  930 A.2d 210 (D.C. 2007) ............................................................................ 4

*Brown v. George Washington Univ.*,
  802 A.2d 382 (D.C. 2002) ............................................................................ 4

*Candido v. D.C.*,
  242 F.R.D. 151 (D.D.C. 2007) .................................................................... 10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ...................................................................................... 4

*Cox v. D.C.*,
  821 F. Supp. 1 (D.D.C. 1993) .................................................................. 5, 8

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ........................................................................................ 9

*Fiacco v. City of Rensselaer*,
  783 F.2d 319 (2d Cir.1986) .......................................................................... 8

*Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*,
  566 U.S. 318 (2012) .......................................................................... 5, 6, 7, 10

*Goodwin v. D.C.*,
  579 F. Supp. 3d 159 (D.D.C. 2022) .............................................................. 9

*Graham v. Connor*,
  490 U.S. 386 (1989) .............................................................................. 5, 6, 7

*Gustafson v. Florida*,
  414 U.S. 260 (1973) ...................................................................................... 6

*Hargraves v. D.C.*,
  134 F. Supp. 3d 68 (D.D.C. 2015) ................................................................ 6

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) ...................................................................................... 9

*Harris v. City of Pagedale*,
  821 F.2d 499 (8th Cir.) .................................................................................. 8

*LaPrade v. Rosinsky*,
  882 A.2d 192 (D.C. 2005) ............................................................................ 4

*Leach v. Shelby County Sheriff*,
  891 F.2d 1241 (6th Cir.1989) ........................................................................ 8

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) .............................................................................. 3, 5, 8

*Musa v. Continental Insurance Co.*,
    644 A.2d 999 (D.C.1994) ............................................................................... 4
*Pearson v. Callahan*,
    555 U.S. 223 (2009) ....................................................................................... 9
*United States v. Brito*,
    771 F. Supp. 3d 157 (E.D.N.Y. 2025) ..................................................... 6, 10
*United States v. Parker*,
    2005 WL 8160507 (W.D.N.Y. June 1, 2005) .............................................. 6
*United States v. Rubio-Sepulveda*,
    237 F. Supp. 3d 1116 (D. Colo. 2017) ..................................................... 6, 10
*United States v. Velazquez*,
    2024 WL 49690 (D.N.J. Jan. 4, 2024) .......................................................... 6
*Warren v. D.C.*,
    353 F.3d 36 (D.C. Cir. 2004) ..................................................................... 5, 9
*Waterhouse v. District of Columbia*,
    298 F.3d 989 (D.C. Cir. 2002) ...................................................................... 4

Statutes

42 U.S.C. § 1983 ................................................................................................ 3, 5, 9

Rules

D.C. Court of Appeals Rule 49(c) ............................................................................ 2
Fed. R. Civ. P. 4(m) and 12(b)(5) ..................................................................... 1, 10
Fed. R. Civ. P. 56(c) ................................................................................................ 1
Federal Rules of Civil Procedure Rule 12(b)(5) ................................................... 10

## INDEX OF EXHIBITS

| **Exhibit Number** | **Exhibit Description** |
| --- | --- |
| Exhibit A | Criminal Charge Sheet |
| Exhibit B | Ofc. S. Proctor BWC Footage |
| Exhibit C | Ofc. Nyamekye BWC Footage |
| Exhibit D | Ofc. Tolar BWC Footage |
| Exhibit E | Ofc. Jackson BWC Footage |
| Exhibit F | Booking Room CCTV Footage |
| Exhibit G | Affidavit of John Horton |
| Exhibit H | Summary of BWC and CCTV Footage |
| Exhibit I | Compilation of BWC and CCTV Footage[2] |

---

[2]     Exhibit I is a compilation of all relevant video from Exhibits B–F, edited for the Court's convenience.  Exhibits B–F remain unedited.

## INTRODUCTION

Plaintiff Karen Hylton was arrested on October 15, 2022, after an altercation with a Dollar Tree Special Police Officer.  Metropolitan Police (MPD) transported Ms. Hylton to the Fifth District station and began the booking process, including searching Ms. Hylton's person. The search was standard, but Ms. Hylton became unruly; she attempted to take her pants off mid-search.  The MPD Officers raised Ms. Hylton's cuffed hands to prevent any further disturbances, completed the search, and placed her in a holding cell.  Now, Ms. Hylton alleges that four MPD officers violated her Fourth Amendment rights by using excessive force during the search.

Despite Ms. Hylton's allegations, the wealth of body-worn camera footage (BWC) says otherwise.  In light of the undisputed evidence, Ms. Hylton cannot show either (1) the MPD officers used excessive force in violation of the Fourth Amendment; nor (2) that any alleged violation was caused by a policy or custom of the District.  Therefore, the Court should grant summary judgment in the Defendants' favor.

In addition, two defendants have not yet been served, even though this case has been pending for 22 months.  So that the case can proceed towards final judgment, the District moves to dismiss the claims against defendants Tiara Proctor and Brittney Nyamekye pursuant to Fed. R. Civ. P. 4(m) and 12(b)(5).

## BACKGROUND

On October 15, 2022, MPD officers responded to a social disturbance at a Dollar Tree near Benning Road NE.  Ex. A, Charge Filed.  MPD officers investigated the situation and found that the Dollar Tree Special Police Officer (SPO) stopped Ms. Hylton to search her bags, resulting in Ms. Hylton exchanging blows with the officer.  *See* Compl. [1] at 2.  MPD arrested Ms. Hylton for assault on a law enforcement officer.  *See* Ex. A, Charge Filed.

1

The arresting officers initially took Ms. Hylton to the hospital to treat her wounds from the altercation. She refused treatment. *See* Complaint [1] at 2-3 ("After refusing the doctor to touch me . . ."). Thereafter, Officers Anthony Jackson and Baileigh Tolar transported Ms. Hylton to the Fifth District station for booking and holding.[3] *See* SUMF ¶ 2.

At the Fifth District station, Ms. Hylton was brought into the main hall near the booking desk for an initial search. *See* Ex. B, BWC S. Proctor; Ex. C, BWC Nyamekye; Ex. D, BWC Tolar; Ex. E, BWC Jackson. Two female police officers, Officers Straneika Proctor and Brittney Nyamekye, then proceeded to conduct a pat-down search of Ms. Hylton's person. SUMF ¶ 3. The pat-down included Officers Proctor and Nymeke briefly feeling near sensitive areas like Ms. Hylton's breasts and close to her genitals. *Id*. Ms. Hylton became unruly, shouting obscenities at the Officers and began pulling down her pants. *Id*. at ¶ 4; *see also* Complaint [1] at 3 ("I started to use my hand while in handcuffs to pull my pants down"). Ms. Hylton's allegations of sexual abuse (*see* Complaint [1] at 3) are simply false; the video footage does not show any such misconduct. *See* SUMF ¶ 7.

The Officers paused the search, and briefly raised Ms. Hylton's arms so they were no longer near her pants. SUMF at ¶ 5. Ms. Hylton began shouting even more, claiming that the Officers were touching her "sores." *See* Ex. B, BWC S. Proctor; Ex. C, BWC Nyamekye; Ex. D, BWC Tolar; Ex. E, BWC Jackson. Officers Proctor and Nyamekye quickly finished the pat-down. *Id*. at ¶ 6. After, Officer Tiera Caprice Proctor proceeded to conduct a metal search, using a detector wand near Ms. Hylton's body. *Id*. at ¶ 8.

---

[3] The District refers the Court to Exhibit H—a summary of all the BWC and CCTV footage exhibits with detailed descriptions of the MPD officer's actions and timestamps corresponding to each video.

The entire search took about a minute and a half.  SUMF ¶ 9.  As shown by the video footage, the officers never "slammed [her] face against the wall" as alleged in the Complaint [1] at 3.  SUMF ¶ 7.

Ms. Hylton was then placed in the holding cell.  Ms. Hylton alleged that they did so roughly.  *See* Complaint [1] at 3 ("They were furious grab me and basically dispose of me physically throwing me in the jail cell as if I was paper.).  The camera footage, however, shows no such thing.  As Ms. Hylton was led into the cell she pulled away from the Officer.  SUMF ¶ 10.  Ms. Hylton did not fall or even stumble, and did not make contact with the walls or anything in the cell.  *Id.*  Ms. Hylton was held overnight and released the following day.

## PROCEDURAL POSTURE

This case was originally filed in Superior Court on October 13, 2023.  It was removed to federal court on December 7, 2023 and consolidated with case number 1:23-cv-3654 on December 18, 2023.  *See generally* Docket.  Ms. Hylton named as defendants the District, and Metropolitan Police Officers Brittney Nyamekye, Straneika Proctor, Tierra Caprice Proctor, and Donna Ulrich.  *See* Complaint [1].  Certain of Ms. Hylton's filings indicated that Mayor Bowser was a defendant.  However, the Court clarified that "Mayor Bowser is not a Defendant in this suit."  *See* Docket Text accompanying Order denying Motion to Dismiss [44].

On February 14, 2025 the Court denied the District's motion to dismiss, ruling that the complaint stated a claim for municipal liability under 42 U.S.C. § 1983 and *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  *See* Memorandum Opinion and Order [44] at 2.  Ms. Hylton's complaints and other filings do not state any common law claims.  *Id.* at 5.

The Court held a Scheduling Conference on July 1, 2025. At the conference, the Court set an August 18 deadline for this motion for summary judgment, and stayed all other deadlines. *See* Minute Order (7/15/2025).

## LEGAL STANDARD

Summary judgment should be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c). "A moving party is 'entitled to judgment as a matter of law' against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Of course, not every dispute between parties in litigation constitutes a "genuine issue of material fact," nor is every dispute sufficient to overcome a properly supported motion for summary judgment. Thus, it is well settled law that ". . . mere conclusory allegations are insufficient to avoid entry of summary judgment." *See Blodgett v. Univ. Club*, 930 A.2d 210, 217 (D.C. 2007) (quoting *Musa v. Continental Insurance Co*., 644 A.2d 999, 1002 (D.C.1994)). Likewise, ". . . there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Blodgett*, 930 A.2d at 217 (quoting *Brown v. George Washington Univ.*, 802 A.2d 382, 385 (D.C. 2002); and *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249–50, (1986)). Finally, and perhaps most importantly "'[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].'" *Blodgett*, 930 A.2d 210, 217 (quoting *LaPrade v. Rosinsky*, 882 A.2d 192, 196 (D.C. 2005); and *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. 2505)).

4

**ARGUMENT**

**I.** **The District Did Not Violate Any Clearly Established Right of Ms. Hylton and is Not Liable Under Section 1983.**

A municipality may be held liable only when the execution of its official custom or policy is actually responsible for the deprivation of constitutional rights. *Cox v. D.C.*, 821 F. Supp. 1, 11 (D.D.C. 1993), *as amended* (May 21, 1993), *aff'd*, 40 F.3d 475 (D.C. Cir. 1994). *Monell* provides the applicable standard: a plaintiff must allege (1) "a violation of [her] rights under the Constitution or federal law," and (2) "that the municipality's custom or policy caused the violation." *Warren v. D.C.*, 353 F.3d 36, 38 (D.C. Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The Court, examining the pleadings, determined that Ms. Hylton pleaded a claim of "excessive force" under *Monell*. *See* 02/14/25 Order, at 2 [44]. But the irrefutable evidence of the BWC and CCTV footage (*see* Ex. H) clearly shows otherwise. Moreover, Ms. Hylton has not and cannot proffer any evidence that any violation was caused by a custom or policy of the District.

**A.** **The District Did Not Violate Ms. Hylton's Fourth Amendment Rights.**

When Ms. Hylton arrived at the police station she was subject to a routine pat-down search—and nothing more. "Correctional officials have a legitimate interest, indeed a responsibility, to ensure that jails are not made less secure by reason of what new detainees may carry in on their bodies." *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 322 (2012).

The legality of the level of force is determined by the "totality of the circumstances" test set out in *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The Fourth Amendment is not violated, however, by

every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers." *Id.*; *see also Hargraves v. D.C.*, 134 F. Supp. 3d 68 (D.D.C. 2015) (holding that the progressive use of force including hand cuffs and blows was not excessive when an arrestee was resisting arrest).

Pat-down searches can be intrusive. However, courts have consistently held that a "pat-search" upon the booking of an arrestee is both "routine" and "entirely reasonable." *See United States v. Rubio-Sepulveda*, 237 F. Supp. 3d 1116, 1125–26 (D. Colo. 2017) (holding that the search during the booking phase of arrest is to "ensure the security of the facility and in part to protect the suspect from incurring additional criminal charges."). The scope of that pat-down can go as far as searching both the "outside and inside" of an arrestee's clothing. *See United States v. Brito*, 771 F. Supp. 3d 157, 175–76 (E.D.N.Y. 2025), *reconsideration denied,* No. 24-CR-1(KAM), 2025 WL 1826390 (E.D.N.Y. July 2, 2025) (citing *Gustafson v. Florida*, 414 U.S. 260, 262–65 (1973)); *United States v. Velazquez*, 2024 WL 49690, at *10 (D.N.J. Jan. 4, 2024), *reconsideration denied,* 2024 WL 1767570 (D.N.J. Apr. 23, 2024) (acknowledging that New Jersey officers are required to "conduct a pat search and inventory of arrestees and their personal effects and document the property on a Prisoner Property Form" before confining the arrestee in Central Booking."); *United States v. Parker*, 2005 WL 8160507, at *9 (W.D.N.Y. June 1, 2005), *report and recommendation adopted,* 2005 WL 1868795 (W.D.N.Y. Aug. 2, 2005), *aff'd,* 277 F. App'x 48 (2d Cir. 2008) (holding that pat searches, including taking loose fitting close off a detainee are standard booking procedures).

Indeed, the Supreme Court has held that jails can routinely require far more intrusive searches, holding that it was lawful for a jail to require "every detainee who will be admitted to the general population . . . to undergo a close visual inspection while undressed." *Florence*, 566

6

U.S. at 322; *id.* at 324 (jail routinely conducted searches that included lifting up a detainee's genitalia and having that detainee cough in a squatting position). Although *Florence* does not address searches of detainees who will not be released into a general jail population (*see id.* at 338-39), the Court "confirmed the importance of deference to correctional officers" charged with maintaining safety and order, and "who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 326.

The video footage shows that Defendants' conduct fell well within the bounds set out by *Graham* and *Florence*. The officers conducted a standard search of Ms. Hylton during the booking process. SUMF ¶¶ 4–5. The BWC and CCTV footage clearly shows that Ms. Hylton consistently attempted to resist whilst berating the MPD officers. *See* Ex. H, at ¶¶ 16–29. As evidenced in the BWC footage, Ms. Hylton, belligerent from the start, became unruly, attempting to lower her pants while berating the Officers. SUMF ¶ 4. Ms. Hylton resisted the search. In response, the Officers lifted Ms. Hylton's arms higher up on her back to prevent any further resistance—it worked. SUMF ¶ 5; Ex. H, at ¶ 20; *see also Graham v. Connor*, 490 U.S. 386, 396 (1989)

Ms. Hylton continued to berate the Officers, claiming that they were "grabbing her sores." *See* Ex. B, BWC S. Proctor; Ex. C, BWC Nyamekye; Ex. D, BWC Tolar; Ex. E, BWC Jackson. Even still, the Officer's need to finish their search outweighs any slight discomfort Ms. Hylton may have felt during the brief (under two-minute) search. *See Florence,* 566 U.S. at 322. In fact, throughout the search, the Officers carefully respond by moving their hands away from the areas Ms. Hylton complains about. *See* Ex. B, BWC S. Proctor; Ex. C, BWC Nyamekye; Ex. D, BWC Tolar; Ex. E, BWC Jackson. Therefore, the facts undisputably show that the MPD Officers did not use excessive force when conducting their search of Ms. Hylton.

**B.    Ms. Hylton Has Not Provided Any Evidence That There is a Policy or Custom of Excessive Force Used During Searches Subsequent Arrest.**

Ms. Hylton bears the burden to demonstrate that, through its deliberate conduct, the District was the "moving force" behind the injury alleged. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). That is, she must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *See id*. Axiomatically, this is the "policy or custom" requirement under the *Monell* doctrine. *See id.* at 403 (quoting *Monell*, 436 U.S. at 694).

The custom—or rather acquiescence—of Fourth Amendment violations—such as excessive force—necessitates a record of the "city's complete failure to maintain an adequate system of disciplining officers who act unconstitutionally." *Cox*, 821 F. Supp. at 11; *see, e.g., Bielevicz v. Dubinon*, 915 F.2d 845, 852–53 (3d Cir.1990) (acquiescence to custom of arresting individuals without probable cause sufficient to support municipal liability); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1247–48 (6th Cir.1989) (failure to investigate and supervise jailkeeper's deplorable treatment of paraplegic inmates sufficient to support municipal liability), *cert. denied*, 495 U.S. 932 (1990); *Harris v. City of Pagedale*, 821 F.2d 499, 504–06 (8th Cir.) (failure to take remedial action against *known pattern* of sexual misconduct by police officers sufficient to support municipal liability), *cert. denied*, 484 U.S. 986 (1987); *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir.1986) (failure to investigate claims of police brutality sufficient to support municipal liability), *cert. denied*, 480 U.S. 922 (1987).

Ms. Hylton presents no such record nor practice of excessive searches in the District. Instead, Ms. Hylton bases her allegations of unconstitutional practices by MPD Officers on

hunches and conclusory statements littered throughout the Complaint. *See generally* Compl. This is wholly insufficient under the *Monell* standard. *See Warren*, 353 F.3d at 38.

In fact, the record shows evidence of quite the opposite. The MPD Officers—as demonstrated in section I—were well within the permissible bounds of a Fourth Amendment search under myriad Supreme Court precedent. *See supra*, § I; *see also* SUMF ¶¶ 3-4. Therefore, because the Officers acted within the legal scope of a reasonable search and there being no record showing otherwise, Ms. Hylton cannot show a policy or custom of excessive force cause her injury in the present case.

## II.    **The Individual Officers Did Not Violate Ms. Hylton's Protected Rights and Are Immune from Liability.**

The doctrine of qualified immunity is an integral part of a functioning government and protects officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine, therefore, shields government officials sued under 42 U.S.C. § 1983. *See Goodwin v. D.C.*, 579 F. Supp. 3d 159, 171 (D.D.C. 2022). The MPD Officers are thus entitled to qualified immunity "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Id*. (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018)).

As previously discussed, the individual officers did not violate Ms. Hylton's Fourth Amendment rights in conducting the search subsequent to her arrest. *See* supra. § I.A.  In fact, the video evidence indisputably shows that the MPD officers used minimal force and intrusiveness, only applying reasonable and sufficient pressure when she became unruly. *See* Ex. H, at ¶¶ 16–22.  The individual officers' actions were well within the scope of a routine search

upheld in *Florence,* simply patting the exterior of Ms. Hylton's clothes. *See* 566 U.S. at 334. No violation of any clearly established rights exist. Just the opposite—*Florence* and its progency "clearly established" that a routine pat-search, as depicted in the video footage, is not only lawful, but highly encouraged throughout multiple jurisdictions. *See Rubio-Sepulveda*, 237 F. Supp. 3d at 1125–26 (lawful pat-search incident arrest necessary for preserving security). The individual officers are therefore immune from any liability as a result of this incident.

### III.  <u>Officers Tiara Proctor and Brittney Nayamekye Should Be Dismissed Because Ms. Hylton Failed to Properly Serve Them.</u>

This case is nearly two years old, and Ms. Hylton—despite the Court's generous offers to help her cure the defect—has failed to properly serve Officer Tiara Proctor and Officer Brittney Nyamekye. *See generally* Docket. Defendants must be "served within 90 days after the complaint is filed." Fed. R. Civ. P. 4(m). Further, Ms. Hylton has made no good faith attempt to serve these two defendants on her own, nor seemingly has a sufficient reason for her failure. When a plaintiff fails to show "good cause" for failure to properly serve a party dismissal of their claim is proper. *See Candido v. D.C.*, 242 F.R.D. 151, 160 (D.D.C. 2007). As such, the District maintains that the Court lacks personal jurisdiction over Officers Proctor and Nyamekye pursuant to Federal Rules of Civil Procedure Rule 12(b)(5), and they should be dismissed from the case. *See id*.

### CONCLUSION

For these reasons, the Court should grant this motion and enter summary judgment for the District.

Date: August 18, 2025                    Respectfully submitted,

                                         BRIAN L. SCHWALB
                                         Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Jonathan Berman*
JONATHAN BERMAN [445169]
Section Chief, Section III

*/s/ Andrew B. Latham*
ANDREW B. LATHAM [90000707]
ELI KOPPEL [90033491]
Assistant Attorneys General
Civil Litigation Division, Section III
400 6th Street NW
Washington, D.C. 20001
(202) 394-2509; (202) 724-7316
andrew.latham@dc.gov; eli.koppel@dc.gov

*Counsel for Defendant District of Columbia*

11

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KAREN HYLTON** | |
| *Plaintiff,* | **Case No. 1:23-cv-03054-JMC** |
| **v.** | **Case No. 1:23-cv-03654-JMC** |
| **DISTRICT OF COLUMBIA,** *et al.,* | |
| *Defendants.* | |

## <u>ORDER</u>

Upon consideration of Defendants District of Columbia, Officer Donna Ulrich, and

Officer Straneika Proctor's Motion for Summary Judgment, any opposition and reply thereto,

and the entire record, it is hereby

**ORDERED** that Defendant's Motion is **GRANTED**;

**ORDERED** that judgment is entered in favor of all Defendants on all claims asserted in

this lawsuit.

**SO ORDERED**.

Date: _____

_____
JIA M. COBB
United States District Judge

<u>Copies to:</u>

Karen Hylton
*Plaintiff Pro se*

Andrew B. Latham, Assistant Attorney General
Eli Koppel, Assistant Attorney General
*Counsel for Defendants District of Columbia,*
*Officer Donna Ulrich, and Officer Straneika Proctor*